## RIVERA *v.* THE PEOPLE.

APPEAL from the District Court of Arecibo.

No. 474.—Decided December 7, 1910.

RECOVERY OF PROPERTY—OWNERSHIP—POSSESSION.—Where the allegations of the complaint and the evidence submitted by the plaintiff tend to show that the action brought is for the recovery of property, the question to be decided as the result of such action is, to whom the property sought to be recovered belongs, and not who is in possession thereof; and the absence of any pronouncement determining the question of ownership is sufficient reason to justify the reversal of the judgment appealed from.

ID.—JUDGMENT—DESCRIPTION OF PROPERTY.—Where the action brought is one to recover possession, the judgment will be of no effect if, as in the case at bar, the property whose possession is ordered to be restored is not described in the judgment, there being no basis upon which to proceed to the execution thereof.

ID.—IDENTITY OF PROPERTY—ACTS OF DESPOLIATION.—In an action to recover possession the plaintiff must clearly establish the identity of the estate of which he has been despoiled by the defendant, as also the act of violence charged whereby the latter deprived the former of its possession.

JURISDICTION—CONSENT OF THE PEOPLE OF PORTO RICO TO BE SUED.—It is held by the Supreme Court of Porto Rico that The People of Porto Rico may be sued without its consent.

The facts are stated in the opinion.

Messrs *Brown, Acting Attorney General,* and *Luis Campillo, fiscal,* for appellant.

Messrs. *Coll Cuchi Hermanos* for respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The plaintiff and respondent, Casimiro Rivera, filed a complaint against The People of Porto Rico in the District Court of Arecibo, claiming to be the owner in fee simple of a rural estate of 400 *cuerdas,* described therein and which he acquired by purchase, according to a public instrument executed December 31, 1895, recorded in the registry of property, having enjoyed the possession of said property, quietly and peacefully, until December 16, 1908, when persons unknown to complainant and alleging that they were employes and agents of The People of Porto Rico, entered therein by force and vio-

lence, without right or title thereto, seized a tract of land, and withhold it from the plaintiff.   Said tract of land is described as follows, to wit:

"Rural estate composed of 98 *cuerdas* of land, bounded on the north by the 'Cortadera'; on the east, formerly by the Siragusa Succession, lands now owned by Mr. Green; on the west by lands formerly of Pablo Cruz, now owned by said Mr. Green; and on the south by lands of the plaintiff."

Plaintiff furthermore alleged that the damages caused him by the seizure of his land amounts to $5,000; and the rents, products and profits thereof from December 16, 1908, to February 23, 1909, which is the date of the filing of the complaint, amount to $4,000; and, finally, he prayed that defendant be sentenced: (1) To deliver to him the possession of the 98 *cuerdas* of land described in the complaint and to pay him the amount of $5,000 as damages; (2) to pay $4,000 for rents, products and profits thereof; and, (3) to pay the costs.

The defendant answered the complaint denying the facts therein alleged and asked for judgment in its favor, with the costs against the plaintiff.   The latter amended the title of his complaint so that it should read "action for the recovery of property," instead of "ejectment."   The hearing was had and the court decided the case by rendering the following judgment, from which this appeal has been taken.

"In this case a hearing was had on June 17, 1909.   Attorney Cay. Coll Cuchí appeared on behalf of the plaintiff and the Assistant Attorney General; Mr. Brown, and Mr. Campillo, *fiscal*, for the district of San Juan, on behalf of the defendant.

"All the evidence introduced by both parties having been heard as well as the arguments of counsel, and the case having been submitted to the consideration of this court, it is hereby held:

"That the facts and the law are in favor ·of the plaintiff and against the defendant, in virtue of which the former should recover the possession of the land segregated from the northern boundary of his property; wherefore the marshal of this court is hereby in-

structed to proceed to the property of said plaintiff, which is described in his complaint, and pull out, or cause to be pulled out, any poles or stakes, leaving said boundary line absolutely free from any obstacle whatsoever, and the expenses incurred in the compliance of this order by the marshal shall be borne by the defendant.

"Defendant is acquitted from the payment of damages, and the costs of this case are declared without special taxation, the right being reserved to The People of Porto Rico to ask for the demarcation of its property or to prosecute whatever action it may consider proper for the enforcement of its rights."

The facts alleged and the evidence introduced by the plaintiff tend to show that the action prosecuted was for the recovery of property, and that the question submitted to the consideration of the court was for it to decide to whom the ownership of a certain tract of land belonged, and, as the judge did not decide this question in his judgment, this case might be decided in accordance with the opinion declared by Mr. Chief Justice Hernández in the case of the *Estate of Fernández* v. *The People et al.* (16 P. R. Rep., 545), decided June 18, 1910.

But, assuming that the action was one for the recovery of possession prosecuted under section 448 of the Revised Civil Code, which is limited by paragraph 1 of section 1869 of the same Code, the judgment appealed from should be reversed because it is not supported by the evidence, and even though it were it would be insufficient, because as the lands, the possession of which is ordered to be restored to the plaintiff, are not described therein, there is no means of making the restitution.

Let us examine the evidence. Plaintiff's evidence consisted by a public deed showing the purchase made by him of the property described in his complaint and of the testimony of the witnesses, Juan Rivera, José Miguel Valle, Manuel Antonio Cubano, José Torres and Nieve Betancourt. Defendant's evidence consisted of a certificate issued by the Commissioner of the Interior showing that in the catalogue of property belonging to The People of Porto Rico there appears a

rural estate composed of 6,500 *cuerdas,* more or less, called
"Caño de Tiburones"; another certificate issued by the Regis-
trar of Property of Arecibo in regard to possessory proceed-
ings in relation to an estate segregated and sold to the plain-
tiff, and of the testimony of the witnesses, Enrique Castro
González and Rafael González.

Plaintiff's property adjoins defendant's property on the
north and, when the facts which gave rise to this suit com-
menced, it appears that there was no fence upon the bound-
ary. From the title deed as well as from the testimony of
the witnesses it appears that the northern boundary is de-
scribed as the "Cortadera." Plaintiff's witness, J. Rivera,
on page 12 of the record, says: "The boundary line of the
'Caño de Tiburones' is known by the name of 'Cortadera';
the Cortadera and the Caño de Tiburones are not the same
thing because *cortadera* is a grass and *caña* a ditch, and the
*cortadera* is contiguous to the *caño.*" And the witness for
defendant, Castro González, on page 26 of the record, says:
"I understand by the term *'cortadera'* certain lands which
are submerged by the waters of the *caño* where an aquatic
plant, called *cortadera,* grows; whence the name of the land."

The plaintiff did not introduce sufficient evidence to show
clearly the exact parcel of land of which he claims to have
been dispossessed by the defendant. He did not introduce any
plans or expert testimony, nor did he ask the court to inspect
the property, but merely introduced the testimony of wit-
nesses tending to show that the line of stakes referred to was
situated upon his land and that he cultivated the land included
within that line and the *caño.* None of his witnesses were
able to state the exact area of the land alleged to have been
occupied by the defendant, and the witness giving the best
description thereof, testified: "It might be said that it was
bounded on the south by the fence, on the north by the *caño*
and the two parallel lines commencing at that boundary."
(P. 16 of the record.)

The acts of violence which plaintiff charges were committed by defendant were not shown, nor was it shown that the plaintiff was not in possession of all of the lands referred to in his title of ownership; and defendant's evidence tended to prove that the line of stakes was situated on the real boundary located as a consequence of a survey made with the consent of the plaintiff, taking as a basis the lateral points indicated by the son and representative of the plaintiff; "that the lands on the north of the line were wet and that there was no sign of cultivation, on them; that in order to be able to deliver the 98 *cuerdas* described in the complaint, the line of stakes serving as a basis, it would not only be necessary to take the lands on the south of the *caño,* but also those on the north and even enter the lands belonging to private parties, and that owing to the work done by the dredge and which was being done thereby at the time the hearing was held, the water level had been noticeably lowered and, therefore, the lands formerly submerged had been drained; and if the *cortadera* only grows in damp places, it is logical to contend that, when the dampness disappears, the *cortadera* would also disappear."

This being a resumé of the result of the allegations and the evidence, the principle of law "*Actore non probante reus est absolvendus*" should be applied in the decision of this case.

In regard to the question of jurisdiction raised by the appellant—that is to say, that The People of Porto Rico cannot be sued in this case because it does not appear that it had consented to be sued—we refer to the opinions of this court delivered in the cases of *Rosaly* v. *The People* (16 P. R. Rep., 48); *Juan Z. Rodríguez* v. *The People* (16 P. R. Rep., 537); and the *Estate of Fernández* v. *The People* (16 P. R. Rep., 545), decided, respectively, June 14, 17 and 18, 1910.

In view of the foregoing, the appeal must be sustained and the judgment appealed from, reversed, and the complaint dismissed with the costs against the plaintiff without preju-

dice to his right to prosecute an action in ejectment for the recovery of the lands involved in this suit.

*Reversed.*

Chief Justice Hernández and Justice Wolf concurred.
Mr. Justice MacLeary dissented.

### DISSENTING OPINION OF JUSTICE MACLEARY.

Although I am not able to agree with all the statements contained in the opinion delivered in this case, I am willing to sign the judgment as it was first prepared. But since it has been amended by inserting the words "and without prejudice to the rights of the plaintiff to bring in legal form an action of ejectment with respect to the lands to which the present suit relates," I cannot sign it and must dissent. For I am clearly of the opinion that the district court is without jurisdiction in this case, for want of any authority, on the part of the plaintiff, to sue The People of Porto Rico without its consent. My reasons for this position are fully set forth in my dissenting opinion in the case of *Rosaly* v. *People of Porto Rico* (16 P. R. Rep., 481), decided by this court on June 14, last. It is unnecessary to repeat or modify the language of that dissenting opinion, for it suits this case as well as that of Rosaly; and reference is made thereto. As the Rosaly case is now pending in the Supreme Court of the United States, the hope is entertained that we may soon have the question definitely and finally settled.